UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEFREESE SMITH, <br><br> Plaintiff, <br><br> v. <br><br> BRYAN CIPOLLA, MARK MOTYKOWSKI, THERESE SKALNIK, DAVID RUBENSTEIN, SONY DADC US INC., <br><br> Defendants. | No. 21 CV 1387 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Defreese Smith sues her former employer, Sony, and four of its employees, alleging that they fired her for two reasons: she is Black and she exercised her employment rights by, among other things, filing a wage complaint with the Department of Labor and filing internal complaints about her co-workers' behavior.

Smith brings claims under 42 U.S.C. § 1981 and Title VII, alleging retaliation and discrimination on the basis of race; § 1983, alleging deprivation of constitutional rights; 42 U.S.C. § 1985(3), alleging a conspiracy to deprive her of her constitutional rights; Art. I, § 20 of the Illinois Constitution (the individual-dignity clause); and Art. I, § 6 of the Illinois Constitution (prohibiting unreasonable searches and seizures). She also brings a claim alleging intentional infliction of emotional distress and seeks leave to amend her complaint to more fully allege her Title VII claim and to add additional state-law claims.

Defendants moved to dismiss. [24].[1] Their motion is granted in part and denied in part. Smith's §§ 1985(3), 1983, and 1981 retaliation claims, as well as her Art. I, § 6 and intentional-infliction-of-emotional-distress claims, are dismissed without prejudice. Her Art. I, § 20 claim is dismissed with prejudice. Her § 1981 and Title VII discrimination claims can proceed, and Smith may file an amended complaint to clarify her Title VII claim.

I.  **Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and cannot rely on legal conclusions or "[t]hreadbare recitals" supported only by "conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept all well-pled facts as true and draw all reasonable inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

II. **Statement of Facts**

Plaintiff Defreese Smith worked for a Sony distribution facility as a sorter from 2004 to 2018. [1] ¶¶ 11–13. In 2007, a human resources supervisor emailed three

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1], and its exhibits. Under Federal Rule of Civil Procedure 4(m), Smith had 90 days to serve the defendants. Smith attempted service by certified mail, but although that can be enough to prompt a waiver of service, it does not accomplish service. Fed. R. Civ. P. 4(d)(1)(A), 4(e). Defendants Cipolla, Motykowski, Skalnik, and Sony waived service, filed appearances, and responded to the complaint notwithstanding Smith's failure to properly serve them. [14]; [23]. But defendant David Rubenstein has not appeared. He has not waived service, has not been properly served, and more than 90 days have elapsed since Smith filed her complaint. Rubenstein is dismissed without prejudice. Fed. R. Civ. P. 4(m).

other employees about an incident between Smith and a co-worker. *Id.* ¶ 15; *id.* at 61. That email contained "fraudulent and misleading statements" about the incident. *Id.* ¶ 15.

In February 2016, Smith told her supervisor, Bryan Cipolla, that Sony was wrongfully withholding wages from her. *Id.* ¶¶ 16–17. In March, Cipolla "reluctantly" reimbursed Smith for the wrongfully withheld wages, though only partially ($92). *Id.* ¶ 17. In May, in response to a complaint Smith filed, the Illinois Department of Labor found that Sony had indeed wrongfully withheld wages and ordered Sony to pay Smith $3,400 in backpay. *Id.* ¶ 19. Neither Sony nor the other named defendants had ever worked together to withhold wages from any of the facility's non-African-American employees. *Id.* ¶ 21.

At some point before February 2017, Smith filed a complaint alleging that she was being sexually harassed by a co-worker. *See id.* ¶ 23. In early February 2017, Therese Skalnik, the facility's human resources manager, drafted a notification of results about the complaint. *Id.* ¶ 23. That notification contained "incorrect, incomplete[,] and inaccurate" statements about the sexual harassment. *Id.* Based on that notification, the Bolingbrook Police Department filed a case report, which also contained "inaccurate and misleading" statements about the sexual harassment. *Id.*[2]

In May 2017, Smith verbally complained to her supervisor, Mark Motykowski, and said she'd been harassed by another co-worker. *Id.* ¶ 24. Motykowski laughed at

---

[2] Smith says the notification of results and police case report are attached as Exhibit 5, *id.*, but they seem to have been left out of the document filed with the court.

3

Smith when she made the complaint. *Id.* Shortly after Smith complained, Motykowski, Skalnik, and Cipolla summoned Smith to a meeting to talk about her complaint. *Id.* ¶¶ 25. After that meeting, Skalnik issued a notification of results with "inaccurate, incomplete[,] and incorrect" information about the alleged harassment. *Id.* ¶ 26.

In January 2018, Smith verbally complained to Skalnik about a co-worker's "workplace violence behavior." *Id.* ¶ 27. Smith alleged that, when she asked the co-worker for boxes, he kicked pallets near her. *Id.* at 71. The following month, Skalnik issued a notification of results that said an investigation into the incident resulted in "inconclusive findings," *id.*, and did not take disciplinary action, [1] ¶ 28. That conclusion was "erroneous." *Id.*

In May 2018, Smith learned that another employee had been an eyewitness to the incident with the boxes. *Id.* ¶ 29. Smith immediately told Skalnik that she had found an eyewitness, *id.*, and filed another complaint, *id.* at 73. In the complaint, Smith said that the eyewitness heard the pallet being kicked and saw Smith "jump back due to being startled"; that the other employee refused to make boxes for her, even though he made them for other employees; and that he made her feel uncomfortable. *Id.* The human resources department interviewed the eyewitness, *id.* ¶ 30, and found that he didn't have new information about the pallet allegation, didn't believe the co-worker had refused to make boxes for any employees, and hadn't seen the co-worker make Smith uncomfortable. *Id.* at 73. The information that HR said

4

the eyewitness provided was "contrary to and inconsistent" with the information he provided to Smith. *Id.* ¶ 30.

In late May 2018, one of Smith's co-workers "aggressively ran up on" Motykowski, who was talking to Smith, and "began cussing and fussing with him" about Smith, saying she'd disparaged one of the facility's supervisors, who had passed away. *Id.* ¶ 31. Later that day, Motykowski told Smith she was under investigation for "something to do with a funeral," but couldn't disclose the specifics. *Id.* ¶ 32.

A few days later, Smith was summoned to a room, where Skalnik chastised her for calling the employee complaint hotline against Skalnik. *Id.* ¶ 33. Smith was also told that she was under investigation for alleged comments about a deceased supervisor. *Id.* On the same day, Motykowski gave Smith her annual work review. *Id.* ¶ 34. Smith was the only employee to receive her review that day. *Id.* Also on that day, Smith met with Skalnik and the facility's company manager about the comment she'd allegedly made about the deceased supervisor. *Id.* ¶¶ 34–35. Neither the manager nor Skalnik told Smith who had reported the comment, nor did they interview the person who Smith had been talking to. *Id.* ¶ 35.

The following day, Smith was "placed in an isolated work area," and told to teach a white male temp worker everything she knew about how to perform her work. *Id.* ¶ 37. Before she left work that day, Motykowski told her that she'd receive the results of the investigation into the deceased-supervisor comment the next day. *Id.* ¶ 38.

5

The next day, when Smith tried to access the facility with her badge, she learned it had been disabled. *See id.* ¶ 42. Once she was let into the building, she met with the facility manager, who told her she was suspended pending the results of the investigation. *Id.* ¶ 43. Later that day, Cipolla told her that she'd get the results of the investigation the next week. *Id.* ¶ 44. The following day, Cipolla called Smith and fired her for "improper conduct and disturbing the warehouse." *Id.* ¶ 45.

After she was fired, Smith applied for state unemployment insurance benefits. *Id.* ¶ 48. Skalnik, though, submitted an objection opposing Smith's claim for benefits, alleging that Smith was ineligible because she'd been fired for unprofessional behavior. *Id.* ¶ 50; *id.* at 78. Sklanik claimed that during "the process of gathering information for the investigation," Smith left voicemails "verbal[ly] assault[ing]" another employee and making derogatory references to other employees. *Id.* at 78. Based on Skalnik's statement, the Illinois Department of Employment Security adjudicator denied Smith's claim. *Id.* ¶ 52. Smith appealed that decision. *Id.* An administrative law judge reversed it and found that Smith hadn't committed any workplace misconduct for purposes of unemployment insurance eligibility. *Id.* ¶ 53. Sony did not appeal the decision. *Id.* ¶ 54.

Two years later, on February 16, 2020, Smith left a voicemail for Cipolla and told him she was unhappy with the way she'd been fired. *Id.* ¶ 56. She told him that she wasn't fired for the comment she'd allegedly made about the deceased supervisor, but instead was fired because she was a Black woman who had exercised her rights

6

to report unlawful employment practices—with one of those reports resulting in Sony being forced to pay her $3,400 in wrongfully withheld wages. *Id.*

Four days after she left the voicemail, three Bolingbrook police officers arrived at her house in the afternoon looking for her. *Id.* ¶ 57. She wasn't home, but her son called her to tell her the police had been there. *Id.* She called the police to ask why they'd come. *Id.* ¶ 58. They told her Cipolla and David Rubenstein, the CEO of Sony, said she'd left a voicemail in which she threatened the physical safety of Sony employees. *Id.* ¶ 59.

Joliet police officers, acting on information from a Village of Bolingbrook Police Department detective, then came to her house to perform a "wellness check." *Id.* She was intimidated by how big the officers were and how many there were, so she let them come in. *Id.* ¶ 61. They insisted that Smith submit to "some type of examination" in the Joliet Fire Department ambulance waiting outside her house. *Id.* Once she was inside the ambulance, the paramedics performed an examination, questioned her, and brought her to the emergency room at Silver Cross Hospital. *Id.* ¶ 62.

In the emergency room, doctors performed three electrocardiogram tests. *Id.* ¶ 63. A psychiatrist also conducted a psychiatric evaluation of Smith. *Id.* ¶ 64. Smith was then transported to a psychiatric facility, where she was kept for three nights. *Id.*

### III. Analysis

#### A. Section 1985(3)

To claim conspiracy under § 1985(3), a plaintiff must allege "(1) the existence of a conspiracy; (2) a purpose of depriving a person or class of persons of [the] equal

7

protection of the laws; (3) an act in furtherance of a conspiracy; and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019). Unlike § 1983, § 1985(3) doesn't require state action, unless the federal right that defendants allegedly violated itself requires state action. *See Briscoe v. LaHue*, 663 F.2d 713, 723 & n.7 (7th Cir. 1981). To the extent Smith's conspiracy claim alleges a conspiracy to violate her Fourteenth Amendment equal protection rights, defendants are right that Smith must allege state action, *see Cohen v. Ill. Inst. of Tech.*, 581 F.2d 658, 663–64 (7th Cir. 1978), which she has failed to do. But if Smith is alleging that protected-class-based discrimination motivated the conspiracy, then she need not allege state action. I read Smith's complaint to be alleging the latter.[3]

Defendants first argue that Smith's claim is time-barred because Illinois' two-year statute of limitations applies to § 1985(3) claims. [25] at 4–5. Smith says this argument is improper at this stage because affirmative defenses should not be resolved on a motion to dismiss. [28] at 8–9. While that is normally true, when it is clear from the complaint itself that the allegations are barred by the statute of limitations, courts can address the issue at the motion-to-dismiss stage. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Section 1985(3) conspiracies—necessarily motivated by invidious discrimination—are akin to personal-injury suits, for which a

---

[3] Defendants also argue that Smith's § 1985(3) claim should be dismissed because "Title VII is the exclusive remedy for private federal discrimination claims." [25] at 5. This is incorrect. Title VII is not the sole avenue of relief for private employment discrimination. *See Walker v. Abbott Labs.*, 340 F.3d 471, 474 (7th Cir. 2003).

8

two-year statute of limitations applies in Illinois. 735 ILCS 5/13-202; *see also Owens v. Okure*, 488 U.S. 235, 236 (1989) (residual personal-injury limitations period applies to §1983 civil rights violations); *Ross v. Illinois*, 48 Fed. App'x 200, 202 (7th Cir. 2002); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, n.2 (7th Cir. 1995). That means that Smith's conspiracy allegation is limited to only incidents on or after March 11, 2019— in other words, only the incident with the police.[4]

There are two ways to construe Smith's conspiracy claim about that incident. First, she may be alleging that only the defendants (all private actors) conspired amongst themselves to unleash the police on her. Second, she may be alleging that the defendants conspired with the police (state actors) to violate her rights. If she is alleging the first, her claim must be dismissed because, under the intra-corporate conspiracy doctrine, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). Smith says that the individual defendants acted "outside" of and "in excess of" the course and scope of their official duties. [1] ¶¶ 5–8; [28] at 4, 5. I understand this to be an argument that, because defendants were acting outside the scope of their employment, the intra-corporate conspiracy doctrine does not apply. But other than these conclusory allegations, Smith doesn't offer anything suggesting this is the case. The individual defendants' actions alleged in the

---

[4] In civil conspiracy cases, the statute of limitations applies to the acts taken in furtherance of the conspiracy, and not to the agreement itself. *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

9

complaint occurred at work and related to their supervision of the workplace and workplace safety. *See id.* ¶¶ 10–56. If Smith is alleging a conspiracy with the police, she has not provided sufficient facts to show "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights." *Wilson v. Giesen*, 956 F.2d 738, 744 (7th Cir. 1992) (quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). Smith only alleges that defendants reported an incident that the police then followed through on. That is not enough to allege a conspiracy. *See id.*

### B. Section 1983

To state a claim under § 1983, a plaintiff must allege that 1) the defendants deprived her of a constitutional right, and 2) acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The only named defendants are private actors, not state or municipal employees. And private actors can only be held liable under § 1983 if they conspire with a state actor. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000). To establish a conspiracy under § 1983, a plaintiff must show that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of [her] constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Id.* (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)).

The Bolingbrook Police told Smith that Cipolla and Rubenstein accused her of making physical threats against Sony employees. [1] ¶ 59. Smith says she made no such threats. *Id.* ¶ 60. For Smith's § 1983 conspiracy theory to prevail, it is not enough for Cipolla and Rubenstein to have lied to the police; the police must have been in on the lie. Smith does not allege that they were, so her conspiracy claim is dismissed.

10

## C. Section 1981

Section 1981 guarantees the right to "make and enforce contracts" to all citizens, regardless of race, 42 U.S.C. § 1981(a), and the equal "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," § 1981(b). It bars racially discriminatory decisions in, among other things, the hiring and firing of employees and retaliation against employees. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008). The statute of limitations for § 1981 claims is four years. *See* 28 U.S.C. § 1658; *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 667–68 (7th Cir. 2014). Unlike Title VII, § 1981 bars only racial discrimination, 42 U.S.C. § 1981(a).

Smith makes a number of allegations that may relate to her § 1981 claim. She says that 1) Sony withheld wages from her because of her race, *see* [1] ¶ 21, 2) fired her because she was a Black woman who reported unlawful wage practices, *id.* ¶ 56, and 3) fired her because she was a Black woman who reported various non-race-related incidents with co-workers, *id.* ¶¶ 47, 56. The crux of her argument is that no similarly situated non-Black employees—those who filed complaints about wage withholding or co-worker incidents—were fired for their behavior. She labels these facts "retaliation."

To state a claim of retaliation under § 1981, an employee must allege that "she suffered a materially adverse action because she engaged in protected activity." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016). "[O]pposing impermissible discrimination," by, for instance, filing a complaint or reporting it to a supervisor, is protected activity. *See Smith v. Bray*, 681 F.3d 888, (7th Cir. 2012), *overruled on other grounds by Ortiz*

11

*v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Under § 1981, that "impermissible discrimination" must be racial discrimination. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). Reporting other types of discrimination or other labor violations (e.g., wage and hour violations) is not statutorily protected activity under § 1981.

Smith says defendants retaliated against her for bringing a successful wage complaint with the Illinois Department of Labor and for reporting various incidents with co-workers. [1] ¶ 56. But when Smith reported these incidents, she didn't claim they were related to race. *See id.* at 65–66 (notification of claim filed under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1); *id.* ¶ 23 (sexual harassment); *id.* ¶ 24 and *id.* at 69 (harassment and an employee critiquing Smith's work); *id.* ¶ 27 and *id.* at 71 (workplace violence). She has not alleged that she engaged in protected activity under § 1981.[5]

But that's not the end of the § 1981 inquiry. The crux of Smith's claim is that she was treated differently than non-Black employees who did the same thing. The relevant theory for § 1981 liability thus isn't retaliation, but simple discrimination. To state a claim of discrimination under § 1981, a plaintiff "need not allege each evidentiary element of a legal theory." *Freeman v. Metro. Water Reclamation Dist.*,

---

[5] Smith says in her complaint that the wage withholding itself was race-related—that defendants did not withhold wages from any non-Black employees. *Id.* ¶ 21. She does not say that she reported this racial discrimination, though, and a post-hoc argument—even if true— cannot turn unprotected activity into protected activity.

12

927 F.3d 961, 965 (7th Cir. 2019).[6] She must only allege that she was fired because of her race. *Id.* (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) and *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say.")).

Smith alleges she was fired because she is Black. She has "give[n] enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The question is not, did the alleged facts happen, but rather, could they have happened. *Id.* Smith's allegation that she was fired because she is Black may or may not be "what 'really' went on" here, but it is an "entirely plausible scenario," *id.* at 405, and that's all she must offer at this stage. Smith can proceed on her § 1981 discrimination claim against Cipolla, Motykowski, Skalnik, and Sony.

### D. Title VII

Under Title VII, a plaintiff in a state with an agency that enforces fair employment laws (Illinois is one of those states) must first file a complaint with the state agency, then wait sixty days before filing a complaint with the EEOC. *See* 42 U.S.C. § 2000e-5(c).[7] The plaintiff has 300 days after the discriminatory act to file with the EEOC. *See* § 2000e-5(e)(1). The plaintiff can only file suit in federal court

---

[6] The pleading standards for Title VII and § 1981 claims are essentially the same (with the caveat that § 1981 forbids only racial discrimination and disparate treatment), *McCurry*, 942 F.3d at 788; *see Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007).

[7] Smith does not say that she filed a complaint with the Illinois Department of Human Rights. But that's ultimately irrelevant because the EEOC itself will file the complaint with the relevant state agency in order to effectuate the sixty-day waiting period under § 2000e-5(c). *See* 29 C.F.R. § 1601.13(a)(3)–(4).

13

once she has received a right-to-sue letter (or various other letters not applicable here) from the EEOC. *See* § 2000(e)-5(f)(1). Once she receives that letter, she has ninety days to file suit. *Id.*

Smith filed her complaint on March 11, 2021, [1], and defendants moved to dismiss on June 22, 2021, [24]. When Smith filed her complaint, she hadn't yet received a right-to-sue letter, so defendants argued that Smith had failed to exhaust her administrative remedies. [25] at 7–8. Roughly a month after defendants moved to dismiss, on July 26, 2021, Smith received her right-to-sue letter. [28] at 14. In their reply in support of their motion to dismiss, defendants don't appear to press the administrative-exhaustion issue. *See* [29]. That makes sense because when a plaintiff files a complaint before she's received a right-to-sue letter, then receives that letter before the complaint is dismissed, the receipt "effectively cure[s] the deficiency in the original complaint." *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991). Dismissal of her Title VII claim is not necessary.

Defendants do not address whether Smith's Title VII claims are time-barred with respect to certain incidents, so I don't address that issue here (and as noted above, affirmative defenses such as timeliness are often not appropriate for resolution at this stage of the case). I grant Smith leave to amend in order to state her Title VII claim now that she has received her right-to-sue notice. Only Sony is a proper defendant in the Title VII claim because a supervisor, in her individual capacity, does not "fall within Title VII's definition of employer." *Williams v. Banning*, 72 F.3d 552,

14

555 (7th Cir. 1995). Cipolla, Motykowski, and Skalnik are therefore dismissed with prejudice from the Title VII claim.

### E. State-Law Claims

Smith also brings claims under Art. I, §§ 6 and 20 of the Illinois Constitution (the search-and-seizure and individual-dignity clauses, respectively), [1] ¶¶ 1, 2, 65, 69, 73, as well as an intentional-infliction-of-emotional-distress claim, *id.* ¶¶ 75–77. Article I, § 20 of the Illinois Constitution provides, "[t]o promote individual dignity, communications that portray criminality, depravity or lack of virtue in, or that incite violence, hatred, abuse or hostility toward, a person or group of persons by reason of or by reference to religious, racial, ethnic, national or regional affiliation are condemned." This language does not create a private right of action; "[i]t is purely hortatory, 'a constitutional sermon'" similar to a preamble. *AIDA v. Time Warner Ent. Co., L.P.*, 332 Ill.App.3d 154, 162 (2002) (quoting *Irving v. J.L. Marsh, Inc.*, 46 Ill.App.3d 162, 165 (1977)). Smith cannot bring a claim under the provision even with further factual development, so this claim is dismissed with prejudice.[8]

Article I, Section 6 of the Illinois Constitution creates a right against unreasonable searches and seizures only by government officials. *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 526–27 (1985); *People v. Smith*, 72 Ill.App.3d 956, 964

---

[8] This is a dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants say Smith's state constitutional claims should be dismissed with prejudice for lack of subject-matter jurisdiction. [25] at 8; [29] at 10. But subject-matter jurisdiction is about a court's power to hear a case, which is not at issue here, since I have supplemental jurisdiction under 28 U.S.C. § 1367. A private right of action is not a component of subject-matter jurisdiction. *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 458 (7th Cir. 2007). Further, dismissal for lack of subject-matter jurisdiction under 12(b)(1) is always without prejudice. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004).

(1979). The only defendants are private actors, so this claim is dismissed without prejudice.

The statute of limitations for intentional infliction of emotional distress is two years. *See* 735 ILCS 5/13-202. Smith filed her complaint on March 11, 2021, so any incidents before March 11, 2019—that is, anything that happened while she was employed by Sony—are time-barred, absent a showing of a continuing violation. *See Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278–84 (2003). Smith has not made such a showing, so I consider only the February 2020 police incident.

Smith must allege three elements: 1) the defendants' conduct must have been "truly extreme and outrageous," 2) they had to have intended for their conduct to cause severe emotional distress or had to have known there was a high likelihood their conduct would do so, and 3) their conduct had to have actually caused such distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Smith doesn't need to show a contemporaneous physical injury, but defendants' conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Id.* (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 21 (1992)).

Even assuming that defendants made a false report to the police alleging that Smith physically threatened Sony employees, that conduct wouldn't suffice. *See Harrison v. Chi. Trib. Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (Black employee who was barred from supervising white subordinates, falsely accused of having poor sales, threatened with discipline, had her calls monitored, and had her car damaged and vandalized didn't state claim for intentional infliction of emotional distress).

16

Intentional infliction of emotional distress is reserved for the most extreme factual scenarios: conspiring to murder one's wife, *Vance v. Chandler*, 231 Ill.App.3d 747, 749–50 (1992); burning down someone's house to get them to leave town, *Honaker*, 256 F.3d at 489–92; or offering an employee money in return for sexual favors and threatening to kill and rape her and challenge her child custody rights, *Pavilon v. Kaferly*, 204 Ill.App.3d 235, 245–46. The alleged conduct here is undoubtedly serious, but it does not rise to that level.

**IV.    Conclusion**

The motion to dismiss, [24], is granted in part and denied in part. Smith's Art. I, § 20 claim is dismissed with prejudice. Her § 1983; § 1985(3); intentional-infliction-of-emotional-distress; Art. I, § 6; and § 1981 retaliation claims are dismissed without prejudice.[9] Her § 1981 discrimination claim against Cipolla, Motykowski, Skalnik, and Sony and Title VII claim against Sony can proceed. Smith has permission to file an amended complaint to clarify her § 1981 and Title VII claims. Any amended complaint must be filed by January 3, 2022. An amended complaint replaces the original complaint and must stand on its own, without reference to earlier pleadings. If Smith chooses to add new claims not raised in her original complaint or replead claims dismissed without prejudice, defendants will have another opportunity to challenge the sufficiency of Smith's allegations. The Clerk shall terminate Rubenstein as a party in the caption. If Smith does not file an amended complaint by

---

[9] *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

the deadline set above, the case will proceed on her § 1981 and Title VII claims only, and the remaining defendants shall answer those claims by January 17, 2022. If Smith files an amended complaint, defendants' response to the amended complaint is due January 24, 2022. Discovery is stayed until defendants answer an operative complaint. The court will set a deadline for the parties to confer and propose a case schedule after defendants file an answer.

ENTER:

Manish S. Shah
United States District Judge

Date: December 13, 2021